ROBERT A. LEITCH, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Leitch v. Commissioner
Docket No. 21859-88
United States Tax Court
T.C. Memo 1989-549; 1989 Tax Ct. Memo LEXIS 547; 58 T.C.M. (CCH) 341; T.C.M. (RIA) 89549; October 10, 1989
Robert A. Leitch, pro se. Philip Starr, for the respondent. NAMEROFF
MEMORANDUM FINDINGS OF FACT AND OPINION NAMEROFF, Special Trial Judge: This case was heard pursuant to section 7443A(b) and Rule 180 et seq. [1] Respondent determined a deficiency in petitioner's *548 Federal income tax for 1986 in the amount of $ 3,377. The issues for decision are 1) whether petitioner is entitled to a deduction for the use of his vehicle in excess of the amount allowed by the respondent; 2) whether petitioner is required to recapture depreciation claimed in prior years with regard to his vehicle; and 3) whether petitioner is entitled to deductions for miscellaneous business expenses in excess of the amount allowed by the respondent. To the extent stipulated, the facts are so found. Petitioner resided in the City of Industry, California at the time the petition was filed. Petitioner was employed by the City of Los Angeles (the City) as a senior construction inspector. During 1986, petitioner's assignments primarily involved overseeing the construction of various public buildings on City-owned property. Petitioner could be assigned to work on any City project in Los Angeles County or elsewhere. In prior years, the City had furnished its inspectors with office *549 space and a car to travel to and from their office and their various construction assignments. However, sometime prior to 1986, inspectors were no longer furnished an office or a City vehicle and were required to provide their own transportation and office facilities. Consequently, petitioner used his home as his office and one of his two cars for transportation to construction sites. In 1986, at his home, petitioner spent time reviewing his plans and specifications in preparation for the next day's activities. Moreover, petitioner used his home to store copies of his work product, various inspection reports, photographs for future use and reference, and various supplies used by him in his business activities. The City required petitioner to have a phone in his home so that he could be contacted by his superiors, if necessary, for consultation or special assignments. Most of petitioner's assignments were sent to him by mail at the address designated by him. (Petitioner chose to have his business mail delivered to a post office box two miles from his home to insure that such mail would not be damaged or removed during the day while he was away. Petitioner's first stop after *550 leaving home in the morning and his last stop on the way home in the evening were at the post office. We do not consider these facts to have a negative impact on the "principal use test" and view the post office box as merely an extension of petitioner's home and not as a separate location.) Petitioner maintained a detailed record of his business travels on a daily basis. Each day before he left his home, he recorded his beginning mileage on a City mileage form and, upon returning from his last assignment, he recorded his ending mileage. These forms also reflected the addresses of the various sites he visited each day, as well as the number of stops he made each day. Petitioner submitted these forms to his superiors on a bi-weekly basis. They were used by the City to reimburse petitioner for the mileage he incurred in traveling to and from his assignments. The City assigned petitioner to a phantom office at the Los Angeles City Hall, which is located 22 miles from petitioner's residence. Accordingly, petitioner was not reimbursed for 44 miles of each day's travels. The City refers to the 44 miles as a "deductor." During 1986, petitioner's actual automobile expenses (including *551 depreciation) totaled $ 7,485, although his tax return reflects $ 7,437. He incurred total mileage of 17,135 in connection with his inspection activities. (Petitioner maintained a second vehicle which was solely used for personal purposes.) Petitioner was reimbursed by the City for 7,282 miles in the amount of $ 2,055.75. Petitioner claimed $ 5,451 on his 1986 Federal tax return as nonreimbursable employee auto expense. (The parties stipulated that this deduction was based on $ 7,485 less $ 2,056, but that difference is $ 5,429. Thus, how petitioner calculated his deduction has not been satisfactorily explained. Petitioner's maximum deduction is $ 5,429.25, $ 7,485 less $ 2,055.75.) In the notice of deficiency, respondent allowed $ 2,186 of this amount, and disallowed $ 3,265. (How respondent calculated the amount allowed has also not been satisfactorily explained.) During 1986, petitioner spent most of his days at more than one construction site. In fact, petitioner spent an entire day at a single construction site on only 47 occasions during the year. Indeed, during any given day, petitioner would usually have to travel back and forth between several construction sites. *552 On some occasions, petitioner recorded as many as 10 to 12 stops in a single day. (On December 1, 1986, petitioner made a round trip to San Diego for a business seminar, driving 240 miles that day. This mileage was included in the statistics set forth above. This trip is not considered local transportation or commuting and is allowable to petitioner as a business deduction.) The vehicle petitioner used in 1986 for business purposes was purchased in 1984. Petitioner claimed depreciation with regard to this vehicle in 1984 and in 1985 in amounts totaling $ 7,367. As a result of respondent's determination that the business use of the vehicle in 1986 did not exceed 50 percent, respondent determined that petitioner was required to recapture the depreciation previously taken on the vehicle. A taxpayer's cost of commuting between his residence and his place of employment is a nondeductible personal expense. ; , affg. . This rule applies whether the taxpayer travels between his residence and one fixed job site or *553 between his residence and any one of a number of different job sites within the metropolitan area. See , affg. a Memorandum Opinion of this Court. However, automobile expenses attributable to traveling from one assignment to another are deductible. ; , affd. per curiam . In addition, a taxpayer may deduct the cost of transportation to and from his office in his home if that office in his home is his principal place of business. ; see ; see also . Thus, we will permit a taxpayer to deduct travel between his home and other places of business only where his use of his home office is so central to his business that trips from his home to his other places of business are in the nature of normal and deductible business travel. ; *554 ; see . "The location of the taxpayer's 'principal office' is a question of fact to be determined by evaluating all the evidence." To determine the petitioner's principal place of business, we must ascertain the "focal point" of his business activities. . Taking into account the totality of the circumstances in this case as disclosed by the record, we hold in favor of petitioner on this issue. A taxpayer can have only one principal place of business for each trade or business in which he is engaged. , affg. ; . In the instant case, the City did not provide petitioner with an office. The fiction of the deductor merely served as a financial arrangement between the City and its employees. Nor can it be said that any one of the various building sites at which *555 petitioner conducted his inspections during 1986 was his principal place of business. The record shows that petitioner worked approximately 230 days in 1986 and, for most of those days, spent time at more than one building location. The fact that petitioner spent some days at only one construction site is inconsequential, since there were eight different construction sites where petitioner worked for an entire day during 1986. While petitioner's evidence did not focus on the time spent in his home on business activities, we think it can fairly be said that petitioner spent at least as much time at his home office during the year as he did at any one particular construction site during 1986. Moreover, petitioner's home was the only place where he could be contacted either by phone or by mail for assignments or other conversations with regard to his work. [2] Most, if not all, of his assignments were received by mail. Petitioner's residence was also a place where he maintained records of his inspection activities, including reports, diagrams, graphs, and photographs. It was also where he spent time reviewing the day's activities and preparing for the next day's activities. While *556 cases of this type tend to be close calls, we think the record justifies a finding on behalf of petitioner. We believe petitioner's home was the focal point of his business and thus his principal place of business. [3]
In , the taxpayer was engaged in the home repair business. Like petitioner herein, Adams plied his trade outside of his home on customers' properties. However, on facts similar to the instant case, Adams' home was found to be his sole fixed location of his business and essential to his operations. Accordingly, we held that his transportation *557 costs to and from his home were not nondeductible commuting expenses. See also . This is not the first case involving an inspector for the City of Los Angeles. Indeed, respondent relies upon , and . Both of these cases, however, held that the expenses incurred by the taxpayers traveling to and from their office at the City Hall were nondeductible commuting expenses. Obviously, those cases are distinguishable from the factual situation involved herein since petitioner's principal place of business was his home. Finally, we note that two Circuit Courts have applied standards for determining a principal place of business different from this Court's "focal point test." The Second Circuit held that the principal place of business was not necessarily the place in which the taxpayer's activities were most visible, but rather where the taxpayer accomplished the dominant portion of his work. See , revg. ; see *558 also , revg. . The Seventh Circuit, in , revg. , considered the length of time the taxpayer spent at the home office compared to other locations, the importance of the business functions performed by the taxpayer in the home office, the business necessity of maintaining a home office, and the money spent by the taxpayer to establish the office. The Ninth Circuit, to which this case is appealable, has not adopted any specific standard. See . Regardless of which test is applied, we believe petitioner's principal place of business was his home, rather than the various locations at which he conducted his inspections. Accordingly, petitioner is entitled to a deduction of $ 5,429.25. In view of our decision above, it is clear that petitioner used his vehicle for business purposes more than 50 percent of the time in 1986 and therefore is not required to recapture any depreciation. Consequently, we hold for petitioner on this *559 issue. See section 280F(b)(3). We now consider petitioner's deductions for miscellaneous business expenses. Petitioner claimed miscellaneous employee business expenses of $ 1,650 on his 1986 return. Respondent allowed $ 879.97 of such expenses and disallowed $ 770.03. While the notice of deficiency explains the disallowance in terms of failure to substantiate claims for tools and uniforms, the parties agree that the items in controversy consist of a telephone expense in the amount of $ 304 and an expense for supplies in the amount of $ 465.83. [4] These supplies consist of items purchased by the petitioner for use in his trade or business. They include notebooks, graph paper, and other various items that petitioner would use in the course of his inspections. The telephone expense consists of one-half of petitioner's total annual telephone bill at his residence. With regard to the office supplies, respondent contends that petitioner was entitled to obtain these supplies from the City or was entitled to obtain reimbursement from the City. *560 Having chosen not to do either, respondent further contends that petitioner is not entitled to deduct these items. Petitioner agrees that he could have called his supervisor to arrange to have some supplies delivered, but that his supervisor only came to see him at most once a week and sometimes less frequently. He further contends that obtaining reimbursement from the City has proven over the past several years to be very difficult, involving a large amount of "red tape" and that he simply did not want the hassle. [5]
*561 Petitioner claimed 50 percent of his annual telephone bill as a business expense. While the telephone was a business necessity, there has been no showing by the petitioner that 50 percent of his telephone bill was incurred for business purposes. Petitioner did not submit any logs to substantiate his telephone expense deductions and was unable to identify any specific phone calls which were business oriented. Indeed, petitioner stated that none of his long distance calls involved business. (No long distance calls were identified in the record, although it is reasonable to assume that part of the large telephone expenditure included long distance calls.) While it is within our purview to estimate the amount of allowable deductions where there is evidence that deductible expenses were incurred, , we must have some basis on which to make that estimate. . This record provides no basis for allocating petitioner's telephone expenditures between business and personal use. See . Therefore, *562 we sustain respondent with regard to this adjustment. With regard to the miscellaneous office supplies, it is clear that no expense may be deducted if a reimbursement from an employer can be obtained. . While petitioner indicated that there was perhaps great difficulty in obtaining this reimbursement, petitioner made no showing that he did in fact attempt to obtain reimbursement and was turned down. Therefore, we hold that while the petitioner's needs for such office supplies were ordinary and necessary in performance of his duties, he is not entitled to claim a deduction for the cost thereof. We sustain respondent on this adjustment. To reflect the above, Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code for the taxable year in question, unless otherwise indicated. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Petitioner stated that he also was available as an independent contractor to consult with private contractors. However, we give no weight to this testimony because in 1986 petitioner obtained no income from private contractors. ↩
3. Petitioner has not claimed a deduction for home office expense. For the sake of clarity, we note herein that, while a home may be a taxpayer's principal place of business, a deduction for an office-in-the-home expense under section 280A requires the satisfaction of additional tests; e.g., regular and exclusive use of a given area.↩
4. $ 770.03 was disallowed and $ 304.00 plus $ 465.83 equals $ 769.83. The discrepancy of 20 cents is noted herein for completeness.↩
5. A significant part of the trial was devoted to petitioner's alleged claims for camera and film supplies, which respondent had claimed to be in issue. However, at the end of the trial, respondent admitted that the amount disallowed in the notice of deficiency did not include film supplies. Respondent then contended, based upon the evidence, that the amount petitioner deducted for film supplies should have been disallowed and requested an opportunity to file an amended answer raising the new issue. Respondent was given 30 days within which to file the amended answer. No amended answer was received, and the record is now closed. Accordingly, the question of allowable expenses for film supplies is not before the Court.↩